**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
**1200 Ontario Street**
**Cleveland, Ohio 44113**

## Court of Common Pleas

**AMENDED COMPLAINT WITH POVERTY AFFIDAVIT**
**August 4, 2026 14:43**

Confirmation Nbr. 3935467

DAVID GADOMSKI — CV 26 140068

vs.

CITY OF NORTH OLMSTED, OHIO ET AL

**Judge:** SHANNON M. GALLAGHER

**Pages Filed:** 12

**IN THE COURT OF COMMON PLEAS**
**CUYAHOGA COUNTY, OHIO**

| | | |
|---|---|---|
| DAVID GADOMSKI, | : | **CASE NO. CV-26-140068** |
| Plaintiff, | : | **JUDGE SHANNON M. GALLAGHER** |
| v. | : | **FIRST AMENDED AND SUPPLEMENTAL COMPLAINT** |
| CITY OF NORTH OLMSTED, OHIO, | : | **Declaratory Judgment; 42 U.S.C. § 1983; Damages in Excess of $25,000; Jury Demand** |
| Defendant. | : | |
| | : | |
| | : | |

Plaintiff David J. Gadomski, proceeding pro se, alleges as follows:

## NATURE OF THE ACTION

**1.** This action concerns the procedures and municipal practices used by the City of North Olmsted to issue and process overnight-parking tickets, grant or deny overnight-parking permission, escalate disputed tickets into towing and impoundment, require payment for vehicle release, administer the bond language in Ordinance 303.08(b), and provide access to a hearing.

**2.** Plaintiff does not deny that he parked on Clareshire Drive during hours prohibited by Ordinance 351.12. He challenges the procedures and practices used to accumulate liabilities, deny further permission, tow and retain his vehicle, condition release on payment, and delay meaningful review.

2A. Plaintiff does not ask this Court to conduct a de novo trial of individual parking tickets. He challenges the municipal system and completed conduct through which the City controlled notice, review, towing, vehicle retention, payment, bond, release, and transmission to Mayor's Court.

**3.** Clareshire Drive is a short residential dead-end street. The City subjected it to repeated, specifically directed overnight enforcement while also granting hundreds of overnight-parking permission entries through an administrative system whose written approval, denial, renewal, and review standards were not disclosed in response to Plaintiff's records requests.

**4.** Plaintiff seeks relief for completed injuries arising from the seizure and retention of his vehicle, the payment required to recover it, loss of use, and the alleged denial of timely and meaningful

process. He also seeks declarations concerning the legality of the procedures and practices applied to him.

## PARTIES, JURISDICTION, AND VENUE

**5.** Plaintiff David J. Gadomski is an adult citizen of the United States. During the events at issue, he resided at 24615 Clareshire Drive, Unit 201, North Olmsted, Ohio. He now resides at 1588 South Street, Titusville, Florida 32780, and continues to own the vehicle involved in this action.

**6.** Defendant City of North Olmsted is an Ohio municipal corporation and political subdivision located in Cuyahoga County, Ohio.

**7.** This Court has original jurisdiction under Article IV, Section 4(B) of the Ohio Constitution, R.C. 2305.01, and R.C. Chapter 2721, and concurrent jurisdiction over the claim arising under 42 U.S.C. § 1983.

**8.** Venue is proper in Cuyahoga County because Defendant is located in this County and the operative events occurred here.

**9.** This pleading challenges the constitutionality, as applied to Plaintiff, of the municipal procedures and practices used to implement Ordinances 351.12, 353.07, and 303.08. Pursuant to R.C. 2721.12, Plaintiff will serve the Ohio Attorney General with a copy of the filed pleading.

## FACTUAL ALLEGATIONS

### A. Clareshire Drive, the City's Safety Rationale, and Directed Enforcement

**10.** Clareshire Drive is a residential dead-end street serving apartment and condominium buildings. It is not a through street.

**11.** North Olmsted Codified Ordinance 351.12 generally prohibits parking on City streets between 2:00 a.m. and 6:00 a.m.

**12.** On its Police Department website, the City states that the overnight parking restriction exists "for the safety of our residents" and directs persons needing on-street parking during prohibited hours to contact the Police Department for permission.

**13.** The City issued Clareshire-specific police directives. An August 11, 2008 memorandum stated that ordinary City parking regulations applied, that permission could be granted under the same guidelines used on other streets, and that permission could be denied when perceived to be abused.

**14.** A September 2, 2011 memorandum granted Clareshire condominium residents blanket permission to park on the street for approximately one week while parking-lot work occurred.

**15.** A November 30, 2015 memorandum directed officers to check and cite a particular Clareshire vehicle nightly when permission was absent and to record that activity in the dispatch system.

**16.** These directives show that Clareshire enforcement and permission were implemented through police instructions, dispatch records, permission files, and discretionary decisions rather than by a wholly automatic system.

**17.** City-produced records for May 13, 2023 through May 13, 2026 list 165 Clareshire citations under Ordinance 351.12.

**18.** For approximately the same period, the City-produced Clareshire arrest report lists five arrests, only one of which is listed during the 2:00 a.m. to 6:00 a.m. parking-restriction window.

**19.** Plaintiff does not allege that arrest totals alone disprove every public-safety rationale. The arrest data is relevant because the City invokes resident safety while its records also show extensive individualized permission to park overnight on this dead-end street.

**B. The Overnight-Parking Permission System**

**20.** The City maintained an administrative database or file through which vehicles could receive permission to park overnight.

**21.** The City-produced permission spreadsheet for May 2023 through May 2026 contains 657 entries identifying Clareshire Drive as the vehicle location.

**22.** Those entries identify at least 34 Clareshire street numbers, with some missing or irregular address entries.

**23.** The entries were highly concentrated: 24510 Clareshire accounted for 319 entries; 24597 Clareshire accounted for 99; 24565 Clareshire accounted for 63; and Plaintiff's former building at 24615 Clareshire accounted for 20 entries involving multiple vehicles.

**24.** The figure 319 describes database entries associated with one address. Plaintiff does not allege that it represents 319 different people or 319 permanent waivers.

**25.** The scale and concentration of these records show that overnight permission on Clareshire was repeatedly and routinely administered and that the City did not treat every overnight vehicle as an intolerable safety condition.

**26.** Plaintiff obtained overnight-parking permission on two occasions. On or about June 2, 2026, he sought permission again and was denied. The request and denial were recorded.

**27.** The City did not disclose to Plaintiff a written rule identifying the criteria governing approval, denial, duration, renewal, revocation, abuse, or administrative review of an overnight-parking request.

**28.** In response to records requests seeking permission policies, denial or restriction records, and administrative-review materials, the City produced the permission spreadsheet and certain directives but did not produce complete written standards governing the permission decisions applied to Plaintiff.

**C. Tickets, Tow, Payment, and Post-Tow Efforts to Contest**

29. Before the tow, Plaintiff received repeated overnight-parking tickets while residing on Clareshire Drive.

30. Before the May 12, 2026 tow, Plaintiff did not contact the City, the Police Department, Mayor's Court, or any City official to contest the tickets, inquire about them, or request a hearing. Plaintiff does not allege otherwise.

31. On May 12, 2026, City personnel caused Plaintiff's vehicle to be towed from Clareshire Drive to Pro Automotive. Plaintiff recovered the vehicle on May 13, 2026.

31A. The North Olmsted Police Department Vehicle Impound Form identifies Officer Junkins, badge number 125, as the impounding officer.

32. The City required that the vehicle be made eligible for release by the Police Department before the towing company would release it.

33. To recover the vehicle, Plaintiff paid approximately $264.60 in towing and storage charges and $315.00 in accumulated ticket-related charges, for a total of approximately $579.60.

34. Plaintiff made those payments to regain possession and use of his vehicle. The payment was the practical condition of release and was not a voluntary abandonment of every objection to the liabilities or procedures.

35. After the tow and recovery of his vehicle, Plaintiff began attempting to contest the tickets and seeking information from Police Department and Mayor's Court personnel. He was told at different times that a ticket was not in the court system, that he was not on the docket, and that he needed to wait for a summons or notice.

35A. Plaintiff repeatedly advised City personnel after the tow that he was attempting to contest the tickets rather than ignore or voluntarily pay them. In a May 29, 2026 email, Captain Angel Walling warned that Plaintiff then had five outstanding tickets and that continued violation and nonpayment could result in his vehicle being towed again.

35B. After the tow, Plaintiff informed City personnel that citation-related notices appeared to have been directed to an Arizona address rather than his Ohio residence and attempted to have the City use his Clareshire address. City personnel later stated that the address had been changed, but no clear written procedure for correcting citation-related notice addresses was identified to Plaintiff.

35C. In recorded post-tow conversations, City personnel stated in substance that a person generally had to wait for a summons, that no one then available could identify a written pre-transmission contest procedure, that towing could occur after multiple unpaid tickets, and that parking tickets had sometimes been contested through discussions with a lieutenant or officer in charge. These statements reflected an informal and unclear review system controlled by City personnel.

36. After the tow, while Plaintiff attempted to obtain review, the City controlled when and how a ticket would be transmitted to Mayor's Court, while ticketing and renewed towing exposure continued.

**37.** Ordinance 303.08(b) states that an impounded vehicle may be released upon the posting of a bond in an amount established by a court of record.

**38.** In a recorded statement, a City representative stated in substance that the Police Department does not utilize the bond option for parking tickets.

**39.** The City did not produce a form, written instruction, designated-court procedure, schedule, training material, or completed example showing how a person in Plaintiff's position could invoke the bond option before paying disputed amounts to recover a vehicle.

**40.** No official provided Plaintiff a usable bond procedure before payment and release.

**41.** The City's public website states only that a towed vehicle must be eligible for Police Department release before the towing company will release it. It does not explain the ordinance's bond language or a method for obtaining prompt judicial review.

42. After recovering the vehicle, Plaintiff received seven additional overnight-parking tickets: Ticket No. 32907 on May 14, 2026; Ticket No. 31693 on May 15, 2026; Ticket No. 32440 on May 21, 2026; Ticket No. 32447 on May 26, 2026; Ticket No. 33161 on May 27, 2026; Ticket No. 33186 on May 31, 2026; and Ticket No. 33256 on June 1, 2026.

**D. Delayed and Inconsistent Mayor's Court Processing**

**43.** Plaintiff continued seeking records and a hearing concerning the parking matters.

43A. The original Complaint filed June 4, 2026 included the impound form, payment records, the seven post-release tickets, representative ticket language, Ordinances 353.07 and 303.08, public-records materials, City correspondence, docket evidence, and summaries of recorded communications. Those materials remain in the court record and support the factual allegations restated and supplemented here.

**44.** On June 23, 2026, Mayor's Court Case No. 26OTH00073 appeared concerning Ticket No. N2602707 and the alleged May 14 violation.

**45.** The public docket initially displayed a June 4, 2026 court date even though Plaintiff had not received notice requiring an appearance on that date.

**46.** A Mayor's Court clerk later stated in a recorded call that the court had "just got it today," that June 4 was not the operative date, and that certified-mail notice would be sent.

**47.** The docket was later changed to show an arraignment on September 3, 2026.

**48.** On June 30, 2026, Mayor's Court Case No. 26OTH00077 appeared concerning Ticket No. N2602813 and the alleged May 15 violation, also set for September 3.

**49.** The City filed its Answer in this action on July 7, 2026 and asserted, among other defenses, that Plaintiff had available remedies through the municipal-court process.

49A. In its Answer, the City admitted that Plaintiff's vehicle was towed and impounded on May 12, 2026, that the impound form identifies Officer Junkins, badge number 125, and that the seven post-tow tickets listed in the original Complaint were issued as numbered and dated.

49B. The City also asserted that Plaintiff's payments were voluntary, that he failed to exhaust available remedies, and that pending ticket matters belonged in municipal court. Plaintiff disputes those characterizations because the vehicle could not practically be recovered without payment, no usable bond procedure was made available, and access to a tribunal depended on the City's later transmission of the tickets.

**50.** On July 24, 2026, both Mayor's Court cases were dismissed and closed before the scheduled arraignment.

**51.** Plaintiff discovered the dismissals on July 30, 2026 by independently checking the online docket. He had not previously received notice explaining the dismissals.

**52.** The public docket did not identify the factual or legal reason for dismissal, who requested dismissal, or who authorized it.

**53.** The dismissals did not restore the money paid, compensate for loss of possession and use, provide the allegedly missing prepayment or prompt post-deprivation process, or explain how the bond provision could have been used.

**E. Municipal Policies, Customs, Practices, and Injury**

**54.** The challenged conduct was not limited to an isolated accidental statement by one employee. It arose from the combined operation of City ordinances, Clareshire-specific directives, standardized tickets, permission records, dispatch practices, towing and release practices, Police Department control over ticket transmission, the practical nonuse or nondisclosure of the bond mechanism, and Mayor's Court notice and docketing procedures.

**55.** The municipal policies, customs, practices, standardized procedures, and decisions alleged here included: (a) directing repeated Clareshire enforcement; (b) administering extensive overnight permissions without disclosed written criteria; (c) allowing liabilities and towing exposure to continue while a ticket holder could not directly initiate court review; (d) requiring Police Department eligibility and payment before vehicle release; (e) failing to make the bond procedure practically available or intelligible; and (f) delaying or inconsistently processing court referral and notice.

**56.** These practices were administered by City departments and officials responsible for parking enforcement, permissions, towing eligibility, release, bond administration, ticket transmission, and Mayor's Court processing.

**57.** The City knew or should have known that a person attempting to dispute parking liabilities could be unable to obtain timely review while ticketing, penalties, and towing exposure continued, and that a vehicle owner could be required to surrender disputed money before regaining possession.

**58.** As a direct and foreseeable result, Plaintiff lost possession and use of his vehicle, paid approximately $579.60 to recover it, incurred time and expense attempting to identify and invoke a hearing process, and suffered additional compensable injury to be proven.

**59.** An actual controversy remains concerning the legality of the completed seizure, retention, payment requirement, and procedures, notwithstanding the later dismissal of the two post-tow Mayor's Court cases.

**COUNT I - DECLARATORY JUDGMENT**
**R.C. CHAPTER 2721 - AS-APPLIED CHALLENGE**

**60.** Plaintiff incorporates all preceding allegations.

**61.** Plaintiff's rights, status, and legal relations were affected by Ordinances 351.12, 353.07, and 303.08 and by the municipal procedures and practices used to implement them.

**62.** A real controversy exists concerning whether the City could invoke Ordinance 303.08 to tow and retain Plaintiff's vehicle while failing to communicate or make practically available the bond method stated in subsection (b).

**63.** A real controversy exists concerning whether the City's standardized notices, permission practices, ticket-transmission practices, towing and release requirements, and Mayor's Court procedures, as applied to Plaintiff, provided a clear and timely method to deny liability and obtain meaningful review at a constitutionally adequate time.

**64.** Plaintiff does not seek a declaration that all overnight-parking regulation is facially invalid. He seeks a declaration concerning the legality and constitutionality of the City's procedures and practices as they were applied to him.

**65.** The later dismissals do not eliminate the controversy concerning completed injuries, damages, or the legality of the procedures applied to Plaintiff.

**66.** Plaintiff is entitled to declarations defining the parties' rights and duties and determining whether the challenged procedures and practices, as applied, complied with Ohio law and the Fourteenth Amendment.

**COUNT II - PROCEDURAL DUE PROCESS**
**42 U.S.C. § 1983**

**67.** Plaintiff incorporates all preceding allegations.

**68.** Plaintiff possessed protected property interests in the possession and use of his vehicle and in the money required to obtain its release.

**69.** Acting under color of municipal law, Defendant caused Plaintiff's vehicle to be seized and retained and required payment as the practical condition of release.

**70.** Under the circumstances alleged, Defendant failed to provide notice reasonably calculated to explain a clear, timely, and practically available means of contesting the liabilities, obtaining prompt review, and invoking the stated bond alternative before Plaintiff had to surrender disputed money to regain possession.

**71.** The alleged deficiency was structural rather than merely random or unauthorized because the City controlled the ticketing, permission, towing eligibility, release, bond, transmission, docketing, and notice systems at issue.

**72.** The municipal policies, customs, practices, standardized procedures, and decisions identified above were the moving force behind the alleged deprivation.

**73.** The process ultimately provided did not cure the alleged deprivation because the Mayor's Court cases were not created until after the tow and payment, were inconsistently docketed, and were dismissed before the scheduled arraignment without restoring the money or providing an adjudication of the contested procedures.

**74.** As a direct and proximate result, Plaintiff suffered actual damages. If all actual damages attributable to the constitutional violation are not proven, Plaintiff is entitled to nominal damages for any established violation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment in his favor and against Defendant as follows:

**A.** Declare the parties' rights, duties, status, and legal relations under R.C. Chapter 2721, Ordinances 351.12, 353.07, and 303.08, and the Fourteenth Amendment;

**B.** Declare whether the City's permission, notice, ticket-transmission, towing, impoundment, payment, bond, release, and hearing procedures, as applied to Plaintiff, complied with Ohio and federal law;

**C.** Declare whether the City could rely upon Ordinance 303.08 to impound or retain Plaintiff's vehicle while failing to make practically available the bond option stated in that ordinance;

**D.** Award compensatory damages in excess of $25,000, in an amount determined by the trier of fact, including all recoverable towing, impoundment, ticket-related, loss-of-use, consequential, and other proven damages;

**E.** Award nominal damages for any established constitutional violation;

**F.** Award prejudgment and post-judgment interest where permitted by law;

**G.** Award taxable costs; and

**H.** Grant such other legal or equitable relief as the evidence and law support.

**JURY DEMAND**

Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,

/s/ David J. Gadomski
DAVID J. GADOMSKI, Plaintiff Pro Se
1588 South Street
Titusville, Florida 32780
Telephone: 907-831-0650
Email: dgadomski1978@gmail.com

**CERTIFICATE OF SERVICE**

I certify that on August 4, 2026, I served a copy of the foregoing First Amended and Supplemental Complaint through the Clerk's electronic filing system upon registered counsel of record and by electronic mail upon Bryan P. O'Malley at omalleyb@north-olmsted.com and Michael R. Gareau at gareaum@north-olmsted.com.

/s/ David J. Gadomski
David J. Gadomski

215106467

# IN THE COURT OF COMMON PLEAS
# CUYAHOGA COUNTY, OHIO

DAVID GADOMSKI
Plaintiff

CITY OF NORTH OLMSTED, OHIO ET AL
Defendant

Case No: CV-26-140068

Judge: SHANNON M GALLAGHER

## JOURNAL ENTRY

UPON THE REQUEST OF THE APPLICANT AND THE COURT'S REVIEW, THE COURT FINDS THAT THE APPLICANT IS AN INDIGENT LITIGANT UNDER R.C. 2323.311. IN ACCORDANCE AND FOR GOOD CAUSE, THE COURT HEREBY GRANTS A WAIVER OF PRE-PAYMENT OF COSTS OR FEES IN THIS MATTER. PURSUANT TO R.C. 2323.311(B)(4), THE CLERK IS HEREBY ORDERED TO WAIVE THE ADVANCE DEPOSIT OR SECURITY.

THIS RULING APPLIES ONLY TO -PREPAYMENT- OF COSTS OR FEES. PLAINTIFF MAY BE ASSESSED COSTS OR FEES AT THE CONCLUSION OF THE CASE DEPENDING ON THE CASE'S RESOLUTION.

Shannon M Gallagher

Judge Signature 06/11/2026

06/10/2026

RECEIVED FOR FILING
06/11/2026 10:20:21
NAILAH K. BYRD, CLERK